IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT

| | |
|---|---|
| PRESTONE PRODUCTS CORPORATION, | ) |
| Plaintiff, | ) No. 13 C 1853 |
| v. | ) Judge Virginia M. Kendall |
| SOUTH/WIN, LTD., | ) |
| Defendant. | ) |

**MEMORANDUM OPINION ORDER**

Plaintiff Prestone Products Corporation filed a nine-count complaint against Defendant South/Win, Ltd. asserting claims for alleged violations of federal copyright law, federal patent law, the Illinois Consumer Fraud Act, the Illinois Deceptive Trade Practices Act as well as common law claims for breach of contract and unfair competition. Defendant moved to dismiss these claims pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for judgment on the pleadings pursuant to Rule 12(c). For the reasons set forth below, the motion is granted in part and denied in part.

**BACKGROUND**

The following facts are taken from the complaint and are assumed to be true for purposes of this Motion. *See Voelker v. Porsche Cars North America, Inc.,* 353 F.3d 516, 520 (7th Cir. 2003); *Murphy v. Walker,* 51 F.3d 714, 717 (7th Cir. 1995). Plaintiff and Defendant are competitors in the automotive care products market. *See* Prestone's Amended Complaint, Doc. 91 at ¶¶ 1-2. Plaintiff Prestone markets and sells automotive products, including windshield

washer fluids, de-icer products, cooling system treatments and window and glass cleaners, under the trademark PRESTONE. *Id.* at ¶ 8. Prestone's windshield washer fluid and de-icer product lines include PRESTONE De-Icer, PRESTONE BUG WASH Windshield Washer Fluid and PRESTONE All Season Windshield Washer Fluid. *Id.* at ¶ 11.

Plaintiff is also the exclusive owner of all rights in the trademark BUG WASH. *Id.* at ¶ 14. This trademark is owned in connection with a chemical composition formulated and applied to clean windshields and remove bug and bird residue, road grime and tree sap from windshields. *Id.* at ¶ 15. Plaintiff has prominently displayed the BUG WASH trademark on its website, promotional materials and literature. *Id.* at ¶ 18. Plaintiff is also the owner of U.S. Patent No. 6,881,711, entitled Low VOC Cleaning Composition for Hard Surfaces (the "711 Patent"), which was issued on April 19, 2005 to Prestone upon assignment from its inventors. *Id.* at ¶ 19. The '711 Patent remains in force. *Id.*

Prestone filed its complaint in this case in March 2013 against Defendants South/Win, Illinois Tool Works ("ITW") and S.C. Johnson & Son, Inc. *See* Doc. 1. After voluntarily dismissing ITW and S.C. Johnson & Sons, Prestone amended its complaint. The instant complaint asserts claims for trademark infringement, false advertising, patent infringement and breach of contract. Doc. 91 at ¶¶ 44-105. This litigation stems from South/Win's manufacture and sale of windshield washer fluids and de-icer products that allegedly improperly compete with Prestone's products. *Id.* at ¶¶ 22, 28, 39-40. In particular, Prestone alleges the Defendant made unauthorized use of Prestone's BUG WASH mark by using the mark in Defendant's products. *Id.* at ¶¶ 22-27. Prestone also alleges that Defendant falsely represented the lowest freeze protection temperature for its de-icer products by claiming that its "Windex De-Icer" is effective at temperatures down to -35 degrees Fahrenheit when, in fact, it is only effective to -27

2

degrees. *Id.* at ¶¶ 28-35. Finally, Prestone alleges that Defendant misused confidential and proprietary information in developing and manufacturing its windshield washer fluid products. *Id.* at ¶¶ 36-43. Specifically, in the Spring of 2013, South/Win began to sell a product called "Windex Bug Wash." *Id.* at ¶ 40. It subsequently changed the name to Windex Bug Cleaner. *Id.* In producing this product, South/Win allegedly misused the confidential and proprietary information that Honeywell International, Inc. – Prestone's parent's predecessor – provided to South/Win upon executing a Confidentiality Agreement when those two parties were evaluating a potential business relationship. *Id.* at ¶ 37. Included within the confidential information Honeywell provided to South/Win was the formulation of the BUG WASH product. *Id.* Prestone also contends that the product Defendant sells using this proprietary information infringes on its '711 patent. *Id.* at ¶ 40.

This litigation appears to be a mere continuation of a multi-front battle between these two competitors. In 2011, ITW (a former defendant in this case) sued Prestone in the Southern District of Texas. That complaint alleged that Prestone engaged in false advertising under the Lanham Act with respect to claims Prestone made about its windshield fluid and de-icer products. In resolution of this dispute, Prestone, ITW and South/Win collectively entered into a Settlement and Release Agreement.[1] The Release provides that:

---

[1] While the Settlement Agreement was not attached as an exhibit to the Complaint, it was attached as an exhibit to Defendant South/Win's answer so the Court may properly consider it in deciding a Rule 12(c) motion. However, even if the Settlement Agreement had not been attached, the Court may, pursuant to Federal Rule of Evidence 201(b), take judicial notice of the Settlement Agreement and its contents in deciding this motion for judgment on the pleadings without converting the motion into one for summary judgment. *See General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) (holding that "[a] court may take judicial notice of an adjudicative fact that is both 'not subject to reasonable dispute' and either 1) 'generally known within the territorial jurisdiction of the trial court' or 2) 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.'") (quoting Fed. R. Evid. 201(b)); *see also, e.g., Hernandez v. Tapia*, No. 10 C 4124, 2010 WL 5232942, at *4, n. 5 (N.D. Ill. Dec. 15, 2010) (taking judicial notice of release in deciding a Rule 12(c) motion); *Boeckman v. A.G. Edwards, Inc.*, 461 F. Supp. 2d 801, 808 n.6 (S.D. Ill. 2006) (taking judicial notice of release agreement in evaluating Rule 12(c) motion); *IBJ Whitehall Bank & Trust Co. v. Cory & Assocs., Inc.*, No. 97 C 5827, 2001 WL 648956, at *1 n.1 (N.D. Ill. June 6, 2001) (taking judicial notice of settlement agreement). The



South/Win's Motion for Judgment on the Pleadings, Ex. D. Doc. 97-1.

At the time the Settlement Agreement was entered into, South/Win had sold over 750,000 units of various products containing the phrase "Bug Wash." *See* Defendant South/Win's Amended Answer to Amended Complaint and Affirmative Defenses, Doc. 99 at 20-21. These sales occurred at major nationwide retailers such as Wal-Mart, Auto Zone, Target, Publix, and Dollar General. *Id.* South/Win also began to sell its Windex De-Icer Product at many of the same retailers since at least February 2012. *Id.* Finally, South/Win also contends that the formula used in the Windex Bug Cleaner product was used in other products that were sold to the public prior to July 2012. *Id.*

## LEGAL STANDARD

While Defendant raises the defense of release in the form of both a Rule 12(b)(6) motion to dismiss and a Rule 12(c) motion for judgment on the pleadings, it is correctly raised as a Rule 12(c) motion because release is an affirmative defense. *See Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010); *see also, e.g., Hernandez v. Tapia*, No. 10 C 4124, 2010 WL 5232942, at *3 (N.D. Ill. Dec. 15, 2010) ("Release and res judicata are both affirmative defenses, and therefore defendants should properly raise them in a responsive pleading and then a motion for judgment

---

Court notes that the parties do not dispute the authenticity of the release agreement, the text of the agreement or that the parties each executed the agreement.

on the pleadings under Federal Rule of Civil Procedure 12(c).") (internal citations omitted). Therefore, the Court will treat the motion as a motion for judgment on the pleadings.[2] However, the distinction is largely inconsequential for purposes of this motion as a Rule 12(c) motion is evaluated under the same standard as a Rule 12(b)(6) motion. *See Hayes v. City of Chicago,* 670 F.3d 810, 813 (7th Cir. 2012).

When considering a motion to dismiss under Rule 12(c), the Court accepts as true all facts alleged in the complaint and construes all reasonable inferences in favor of the non-moving party. *See Forseth v. Village of Sussex,* 199 F.3d 363, 368 (7th Cir. 2000). A Rule 12(c) motion is decided on the pleadings alone, which includes "the complaint, the answer, and any written instruments attached as exhibits." *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend,* 163 F.3d 449, 452 (7th Cir. 1998) (citing Fed. R. Civ. P. 10(c)). Where a party "moves for judgment on the pleadings, the motion should not be granted unless it appears beyond doubt that the non-moving party cannot prove facts sufficient to support his position." *Housing Authority Risk Retention Group, Inc. v. Chicago Housing Authority,* 378 F.3d 595, 600 (7th Cir. 2004).

## DISCUSSION

Prestone's Complaint alleges three separate factual predicates for the claims it asserts. First, its claims for trademark infringement, false designation of origin and unfair competition in Counts I, III, V and VII of the Complaint are all predicated on the use of the term "Bug Wash" in connection with the sale of windshield washer fluid products. Second, the consumer fraud claims Prestone asserts in Counts II, IV, VI and VII are all predicated on Defendant's advertisement that its Windex De-Icer product is effective to -35 degrees Fahrenheit when, in fact, it is allegedly only effective to -27 degrees Fahrenheit. Finally, the claims in Counts VIII and IX of the Complaint are predicated upon Prestone's interest in formula protected by the '711

---

[2] Defendant South/Win has filed an answer in this case. *See* Doc. 99.
5

patent. South/Win contends that each of these sets of claims, and therefore the entire complaint, is barred by the 2012 Release.

I.   **The Release Bars the "Bug Wash" Claims**

As described above, South/Win contends that the 2012 Release bars Prestone's claim that its use of the term "Bug Wash" in products it manufactures and sells under the BLUE CORAL and WINDEX brand names infringes Prestone's trademark BUG WASH. The 2012 Release provides in relevant part that:



Doc. 97-1. Since a release is a type of contract, the Court's primary objective in construing the release is to give effect to the intent of the parties. *See Hampton v. Ford Motor Co.*, 561 F.3d 709, 714 (7th Cir. 2009); *Village of South Elgin v. Waste Management of Ill., Inc.*, 810 N.E.2d 658, 670 (Ill. App. Ct. 2004).[3] Illinois follows the objective theory of intent, whereby the Court looks first to the written agreement and not to the parties' subjective understandings. *See Newkirk v. Village of Steger*, 536 F.3d 771, 774 (7th Cir. 2008). Thus, contractual language should not be construed in a manner contrary to the plain, obvious, and generally accepted meaning of the terms. *See Hampton*, 561 F.3d at 714; *Krilich v. American National Bank & Trust Co. of Chicago*, 778 N.E.2d 1153, 1164 (Ill. App. Ct. 2002). Indeed, where a contractual term is clear and explicit, it should be enforced as written. *Hampton*, 561 F.3d at 714; *Rakowski v. Lucente*, 472 N.E. 2d 791, 794 (Ill. 1984). A contract is ambiguous if its terms may reasonably be interpreted in more than one way but it is not rendered ambiguous simply because

---

[3] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 706 (7th Cir. 2004) (holding that Illinois courts generally "respect a contractual choice-of-law clause . . . .").

the parties disagree upon its proper construction. *See Hampton,* 561 F.3d at 714. Rather, an ambiguous contract is "an agreement obscure in meaning, through indefiniteness of expression, or having a double meaning." *Whiting Stoker Co. v. Chicago Stoker Corp.,* 171 F.2d 248, 251 (7th Cir. 1948); *Hampton,* 561 F.3d at 714.

██████████████████████████████████████████████ *See* Doc. 97-1. However, Defendant's responsive pleading establishes that South/Win has used the term "Bug Wash" in its windshield washer fluid products since 2008. *See* Doc. 99, Aff. Def. 1 at 21 ("Specifically, beginning in 2008 through 2012, South/Win sold over 750,000 units of various products containing the phrase 'Bug Wash,' and these sales have occurred at major nationwide retailers . . . ."). Prestone does not dispute, and thus concedes, this fact. Since the 2012 Release bars "█ ███████████████████████████████████████████████████████████████████████ ███████████████████████" it bars any claims with respect to Defendant's use of the term "Bug Wash" since those claims arose prior to the Effective Date of the 2012 Release. *See, e.g., Axiom Ins. Managers Agency, LLC v. Indemnity Ins. Corp.,* No. 11 C 2051, 2011 WL 3876947, at *6 (N.D. Sept. 1, 2011) (holding that because plaintiff's Lanham Act claims are based on alleged misrepresentations that occurred before the effective date of the general release in an underlying settlement agreement, "the Settlement Agreement bars its Lanham Act claim insofar as [plaintiff] bases that claim on those events.") (internal citations omitted).

Prestone's arguments to the contrary are unpersuasive. First, Prestone argues that the Court should not give effect to the release because Prestone "did not learn that South/Win was selling windshield washer fluid with Prestone's BUG WASH trademark . . . until Spring 2013" and therefore the trademark infringement claims were not contemplated at the time the 2012 Release was agreed to. Doc. 107 at 9-10. However, a general release, like this one, "typically

7

covers 'all claims of which a signing party has actual knowledge or that he could have discovered upon reasonably inquiry.'" *Hampton,* 561 F.3d at 715 (quoting *Fair v. Int'l Flavors and Fragrances, Inc.,* 905 F.2d 1114, 1116 (7th Cir. 1990)).[4] Prestone's claim could have been discovered upon reasonable inquiry in this case. The Complaint concedes that "South/Win's Infringing Products are sold in the same channels of trade as Prestone's BUG WASH windshield washer fluids, including sale in many of the same stores throughout the United States." Doc. 91 at ¶ 23. Indeed, both parties state that their products are sold at Wal-Mart and Auto Zone. *See, e.g.,* Doc. 99 at 21 ("South/Win sold over 750,000 units of various products containing the phrase "Bug Wash," and these sales have occurred at major nationwide retailers such as Wal-Mart, Auto Zone, Target, Publix, and Dollar General."); Doc. 91 at ¶ 12 ("Prestone sells Prestone's Products at major national retail store chains, such as Wal-Mart, AutoZone . . . ."). This Court finds it hard to believe that a sophisticated corporation like Prestone would not keep apprised of its competitor's products and representations (especially a competitor it is in constant litigation with). Thus, the Court does not find Prestone's claim that it only discovered the alleged infringement when a Wal-Mart representative showed Prestone a marketing flyer in 2013 to be credible. However, even if Prestone only learned of the infringement in 2013, it could have discovered the alleged infringement through reasonable inquiry by merely taking stock of the products on the shelves of its distributors.

Similarly, Prestone's argument that it did not intend to release existing trademark infringement claims when it executed the 2012 Release is meritless. Applying the objective theory of intent, as it must, the Court looks to the written agreement and not to the parties' subjective understandings. *See Newkirk,* 536 F.3d at 774. Since the plain language of the release

---

[4] In *Hampton,* the Court applied Illinois law in determining whether the asserted claims were barred by the release at issue.

states that it bars "████████████████████████████

███████████████████████████████████],"[5] it is clear the parties

intended to resolve all outstanding claims that existed between them when they executed the settlement agreement. *Cf. Hampton*, 561 F.3d at 716 (holding that a party need not enumerate specific claims that are covered by a general release). Prestone's attempt to interject its subjective intent into the meaning of the release must be rejected as it would require the Court to interpret the release in a way contrary to the plain, obvious, and generally accepted meaning of its terms. *See id.* at 714 (holding that a court may "not interpret contractual language in a way contrary to the plain, obvious, and generally accepted meaning of its terms.") (internal citations omitted).

Prestone's related argument that under Illinois law a release only covers the subjects contemplated by the parties and, thus, "[t]he fact that Prestone 'could or should have been able to discover' South/Win's Infringing Products is irrelevant" is contradicted by clear, binding Seventh Circuit precedent. *See id.* at 715 (holding that a general release "typically covers 'all claims of which a signing party . . . could have discovered upon reasonably inquiry.'") (internal quotations omitted); *Fair*, 905 F.2d at 1116 (same). Therefore, this assertion is meritless.

Finally, Prestone's argument that the release does not bar an action against the Defendant because the Defendant continues to infringe by using term "Bug Wash" after the execution of the release fails as well. The 2012 Release provides that "████████████████

████████████████████████████████████████████████████████

████████████████████████" *See* Doc. 97-1. The natural meaning of this provision is that parties intended to release each other from any potential claims based on conduct that occurred prior to the execution date. This meaning must be given effect. *See*

---
[5] *See* Doc 97-1 (emphasis added).

*Hampton*, 561 F.3d at 714 (holding that "[w]here a contractual release is clear and explicit, we must enforce it as written."). Since the conduct giving rise to the infringement claim arose before the execution of the settlement agreement, the infringement claim was released even though the conduct allegedly continued after the execution of the release date. *Cf. Hampton*, 561 F.3d at 715 (holding that the natural meaning of the language in a release demonstrated the parties intended to release any potential claims based on conduct that occurred prior to the execution date); *Wagner v. NutraSweet Co.*, 95 F.3d 527, 533 (7th Cir. 1996) ("In release cases, the question is not when was the date of accrual, but rather whether the plaintiff is knowingly giving up the right to sue on some claims, or all claims that are in general terms predictable."). Any other construction would be contrary to the plain, obvious meaning of the language of the agreement.[6] Accordingly, the Court finds that the 2012 Release bars Prestone's claims for trademark infringement and unfair competition based on the use of the term "Bug Wash."

## II. The Release Bars the "-35 Degrees" Claims

Prestone's Complaint also asserts that South/Win has violated various consumer fraud statutes by falsely advertising that its Windex De-Icer product is effective to -35 degrees Fahrenheit when, in fact, it is allegedly only effective to -27 degrees. Based on this allegedly false statement, Counts II, IV, VI and VII assert claims for violations of: (1) Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count II); (2) the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1 *et seq.* (Count IV); (3) the Illinois Deceptive Trade Practices Act, 815 ILCS § 510/1 *et seq.* (Count VI); as well as (4) a common law claim for unfair competition (Count VII). However, Defendant's Windex De-Icer product has contained this advertisement since February 2012, which predates the 2012 Release. Therefore, since the

---

[6] The Court notes that Settlement Agreement states that the release is "███████████████████████████████████████████████████████████████." However, this language is intended to allow a party to pursue a cause of action that arose in the future, not one based on conduct that was previously released.

Release bars "█████████████████████████████████████████████████████████████████]," it bars any claims with respect to Defendant's "-35 degree" advertisement as well. Since Prestone's arguments to the contrary are the same as the ones they raised with respect to the "Bug Wash" claims, they are rejected for the same reasons. Accordingly, the Court finds that the 2012 Release bars the claims asserted in Counts II, IV, VI and VII as well.

### III. The Release Does Not Bar Prestone's Patent Infringement and Breach of Contract Claims at this Time

Prestone's third set of claims relates to its '711 patent. Counts VIII and IX of the Complaint assert that Defendant's Windex Bug Cleaner products infringe Prestone's rights in the '711 patent and the development and use of the formula in the Windex Bug Cleaner violates the terms of a confidentiality agreement entered into between Defendant and Honeywell International. While Defendant asserts that these claims are also barred by 2012 Release, there is a significant difference between these claims and the "Bug Wash" and "-35 degrees" claims. Specifically, the Complaint alleges that the infringing Windex Bug Cleaner was not offered for sale until the Spring of 2013, which post-dates the execution of the 2012 Settlement Agreement. *See* Doc. 91 at ¶ 40. As a result, Prestone would not have been aware of and could not have discovered through reasonable inquiry the patent infringement or breach of contract claims until Spring 2013. Since the 2012 Release was "████████████████████████████████████████████████,"[7] the 2012 Release does not bar these claims. Defendant's only argument to the contrary is that it contends the formula used in the Windex Bug Cleaner product was actually first sold in the United States in 2011. However, in a motion for judgment on the pleadings, the Court must credit the non-moving party's assertions as

---

[7] *See* Doc. 97-1.

11

true. *See, e.g., Minnesota Mut. Life Ins. Co. v. Otrusina*, 91 C 8378, 1992 WL 317215, *1 (N.D. Ill. Oct. 26, 1992) ("In assessing a motion under Rule 12(c), all well pled factual allegations made by the party opposing the motion must be taken as true, and all allegations made by the moving party that are denied by the non-moving party must be taken as false."). Therefore, at this time, the Court must credit Prestone's assertion that the alleged patent infringement first occurred in Spring 2013. Accordingly, the Court finds that these claims are not barred by the 2012 Release at this time.

## CONCLUSION

For the reasons set forth above, Defendant's motion for judgment on the pleadings is granted in part and denied in part. Judgment is entered in Defendant's favor on Counts I, II, III, IV, V, VI and VII of the Complaint as these claims are barred by the 2012 Release. Defendant's motion is denied with respect to the claims for infringement of the '711 patent and breach of contract in Counts VIII and IX of the Complaint.

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 9/13/2013